**Max SHAYNE and Irving Shayne, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 15406.**

United States Court of Appeals
Ninth Circuit.

May 10, 1958.

Rehearing Denied June 9, 1958.

---

Morris Lavine, Los Angeles, Cal., for appellants.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, Lloyd F. Dunn, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and CHASE A. CLARK, District Judge.

**CHASE A. CLARK, District Judge.**

Notice of appeal in this matter was filed on behalf of two defendants, Max Shayne and Irving Shayne. During the pendency of the appeal Max Shayne died, so in disposing of the appeal we will discuss the questions raised only as they may concern the appellant Irving Shayne. The indictment returned by the Grand Jury on January 4, 1956 contained nine counts charging the appellants essentially as follows:

Count I, from June 1952 to April 1953 appellants Max Shayne and Irving Shayne conspired together and with other persons (a) to defraud the United States by causing the Federal Housing Administration to insure and guarantee loans for home improvements by reasons of false and fraudulent written statements which would be made pursuant to said conspiracy and which loans would not otherwise be so insured and guaranteed; (b) to commit certain offenses against the United States in violation of Sections 1010 and 2 of Title 18 United States Code, by causing to be passed, uttered and published certain false statements to lending institutions, for the purpose of obtaining for certain applicants loans and advances of credit from said lending institutions, with the intent that such loans and advances of credit would be offered to and accepted by, the Federal Housing Administration for insurance;

It was a part of said conspiracy and an object thereof that defendants Max Shayne and Irving Shayne, singly and together, would meet with certain persons who were home owners and who, as the defendants well knew, desired money, which said home owners intended to use for various and sundry purposes not relating to the improvement of their homes; by promising to assist said home owners to secure a loan of money, defendants Max Shayne and Irving Shayne were to induce and persuade said home owners to affix their signatures to contracts whereby said home owners would agree that a construction and improvement company would furnish materials and services to improve their homes; the defendants, in addition, agreed that they would induce and persuade said home owners to sign certain other documents including FHA Title I Credit Applications which, in addition to the con-

tract aforementioned, the defendants thereafter would cause to be passed, uttered and published to lending institutions for the purpose of obtaining for said home owners loans or advances of credit from said lending institutions, which loans or advances of credit, it was intended, would be offered to, and accepted by, the Federal Housing Administration for insurance; it was known and agreed by the defendants that the documents to be signed by the home owners and to be utilized by said defendants as described hereinbefore would include, among others, FHA Title I Credit Applications which would state that the proceeds of the loans applied for by said home owners (hereinafter referred to as "applicant-borrowers") would be used to improve the property of said applicant-borrowers in a manner and in an amount to be described by said credit applications; these credit applications and the statements contained therein would be false, as said defendants well knew, for, in truth and in fact and to the knowledge of said defendants, the applicant-borrowers would not intend to use, nor would they use the proceeds of the loans applied for to improve their property in the manner and in the amount as described by said credit applications, but rather said applicant-borrowers, at all times would intend to use, and would use, the proceeds of the loans for various and sundry purposes not relating to the improvement of their homes and not within the authorized purposes for such insured loans as set forth by the National Housing Act, as amended, 12 U.S.C.A. § 1701 et seq., and the regulations thereunder;

It was further a part of said conspiracy and an object thereof that said defendants, in their capacity as employees and salesmen for certain home improvement and construction companies, would arrange for such work as was ordered to be done by said applicant-borrower to be performed by persons herein called "subcontractors"; the defendants would conspire together and agree to submit invoices from said subcontractors to the home improvement and construction companies, for which the defendants acted as employees and salesmen, which invoices would purport to show that said subcontractors had completed the work requested of them upon the home of said applicant-borrowers, the defendants agreed that said invoices would be false for, in truth and in fact, the above mentioned work would not have been performed by said subcontractors; by this device defendants would acquire for their own personal gain the money which was intended for said subcontractors by reason of the invoices submitted by them; and

To effect the objects of said conspiracy the defendants Max Shayne and Irving Shayne committed divers overt acts in the Central Division of the Southern District of California, among which are the following: * * *

Count II, On April 24, 1953 both appellants Max and Irving Shayne caused to be passed, uttered and published certain false statements pertaining to applicant-borrowers Archie L. Thompson and Viola Thompson in violation of Sections 1010 and 2 of Title 18, United States Code.

Count III, same type of offense as Count II except it occurred on June 10, 1952 in respect to applicant-borrowers Henry E. Green and Martha Green.

Count IV, similar to Count II, except it occurred October 15, 1952 pertaining to applicant-borrowers Mandell Drakes and Moshell Drakes.

Count V, similar to Count II, except Max Shayne alone is charged and it occurred October 3, 1952 pertaining to applicant-borrowers Eligh S. Moore and Vivian Moore.

Count VI, similar to Count II except Max Shayne alone is charged and it occurred September 5, 1952 pertaining to applicant-borrower David L. Hamilton.

Count VII, similar to Count II, except Max Shayne alone is charged and it occurred July 15, 1952 pertaining to John Olsen and Leona Olsen.

Count VIII, similar to Count II, except Max Shayne alone is charged and it occurred June 16, 1952 pertaining to ap-

plicant-borrower H. C. Cooper. (This count was dismissed by the Government.)

Count IX, similar to Count II, except Max Shayne alone is charged and it occurred on June 17, 1952 pertaining to applicant-borrowers Earnest C. Johnson and Flordie Mae Johnson.

Thereafter certain preliminary motions were presented and disposed of by the Court and on May 1, 1956 appellants entered pleas of not guilty as to eight counts (Count VIII having been dismissed on Motion of the Government as noted above).

The trial was commenced on August 27, 1956 and at the conclusion of a lengthy trial the jury returned a verdict of guilty as to Max Shayne on Counts 1, 2, 3, 5, 6, 7 and 9, and also returned a verdict of guilty against Irving Shayne as to Count 1. On September 2, 1956 Motion for new trial was filed which motion was denied on October 8, 1956. However, as stated, we are here concerned only with the judgment of conviction which was entered on October 8, 1956, as it affects Irving Shayne.

Specifications of error numbered one to twelve are assigned here and we will take them up in order.

██ Specification I. "The defendants were erroneously charged with multiple conspiracies in a single conspiracy count in violation of the rule of Kotteakos v. United States, 328 U.S. 750 [66 S.Ct. 1239, 90 L.Ed. 1557]. This procedure denied fair trial, guaranteed by the due process clause of the Fifth Amendment."

We disagree with the contention of appellant. It is apparent that count one charges a single continuing conspiracy. True, there were involved a number of loans to be made to a number of home owners but this charge concerns Max and Irving Shayne, only. It was a conspiracy to submit false claims to an agency of the United States in respect to FHA Title I loans, with the purpose in mind at the time, that the money so loaned to various home owners would not be used for home improvements. The record dis-

closes that the entire trial was conducted on the theory that the conspiracy charged was a single continuing conspiracy. The evidence indicates clearly a common purpose and a common method of operation on the part of Appellant and his brother Max Shayne, deceased.

The indictment as we see it charges a single continuing conspiracy. Nye & Nissen v. United States, 9 Cir., 168 F.2d 846.

While each of the counts in the indictment other than the conspiracy count involves different and separate applicants and property owners, as far as this appellant is concerned it charges a single and continuing conspiracy throughout all the transactions.

Specification II. "The trial court erroneously sent the indictment to the jury room during its deliberations. The Bill of Particulars was not sent. This eliminated all other persons as conspirators except the two defendants."

██ We deem it sufficient to say that the matter of sending the indictment and exhibits to the jury is a matter entirely in the discretion of the trial Court, C. I. T. v. United States, 9 Cir., 150 F.2d 85. We find here that it was specifically mentioned by the Court that if there was any portion of the indictment the defendants felt should not be read that the Court would consider not reading that portion. No motion, objection nor exception was made or taken at that time. Regarding the matter of not sending the Bill of Particulars to the jury, that too was a matter in the Court's discretion and we find no error in the action taken by the trial court.

██ Specification III. "The trial Court erroneously instructed the jury that persons other than the defendants could be conspirators, contrary to the specification in the Bill of Particulars."

The charge in Count I of the indictment was not affected by the Bill of Particulars. The Statement by the Government in the Bill of Particulars, as follows: "The Government will not contend at the trial that any other persons

were co-conspirators with the defendants" took nothing away from the charge against this appellant. As stated in the Government's brief "The Bill of Particulars does not amend the indictment nor change the nature of the charge".

Specification IV. "The indictment failed to state an offense against the United States in that it failed to inform the accused of the nature and cause of the accusation as required by that Amendment."

■■ In order to clarify the above specification of error it might be well to quote from Appellants' brief. "The Sixth Amendment to the Constitution of the United States must be read into every proceeding in the Federal Court and that amendment requires notice of the nature and cause of the accusation in the indictment". It is the Court's opinion that the statute under which the charge here is brought is neither vague nor indefinite. Likewise, Count I of the indictment certainly would inform a person of average intelligence that the act or offense with which he is charged is a crime under the particular statute involved.

Specification V. "The Court erred in denying defendants the Bill of Particulars as requested. This denied the Defendants an opportunity to prepare fully for their defense. The defendants in this case moved for a Bill of Particulars at the beginning of the case. The request was quite specific and detailed and necessary for the defendants to prepare their defense. The Court denied the motion, in most respects, as requested."

■ We need only say in disposing of the above specification that it has been held by this Court a good many times that the granting or denial of a Bill of Particulars is discretionary with the trial Court, one of the latest cases so holding is Legatos v. United States, 9 Cir., 222 F.2d 678. We find no error in the ruling of the trial Court on the matter.

■ Specification VI. "The Court erred in refusing the defendants the right of full inspection of all documents and refusing to order compliance with a subpoena Duces Tecum."

As to the motion for full inspection of documents and the matter of ordering or not ordering compliance with the subpoena duces tecum, the record fails to show any prejudice or abuse of discretion on the part of the Court in any ruling made concerning these motions.

Specification VII. "Section 1010, [18] United States Code, has been unconstitutionally construed and applied, and is inherently unconstitutional in violation of the due process clause of the Fifth Amendment as being too vague, indefinite and uncertain."

We have disposed of specification VII in dealing with specification IV.

Specification VIII. "The section regarding false statements requires the application of the two witness rule, as to perjury prosecutions. The Court failed to so instruct the jury."

■ After a study of the record and the cases cited we feel that the perjury rule does not apply here. Todorow v. United States, 9 Cir., 173 F.2d 439; Fisher v. United States, 9 Cir., 231 F.2d 99. These are cases decided by this Court and seem to fully answer this specification.

Specification IX. "The verdicts are contrary to the law and the evidence. The evidence is insufficient to support the verdicts."

The above specification is set out in four subdivisions in appellant's brief. Without going into each subdivision in detail we deem it sufficient to say that the record contains ample evidence to support the verdict returned against the appellant. The rulings of the trial Court were proper as were the instructions dealing with conspiracy.

Specification X. "The Court erred in instructions given and refused."

■■ It is contended by appellant that the Court instructed the jury "contrary to the Bill of Particulars". As we mentioned in our comment as to speci-

fication III, the Bill of Particulars did not change the charge in count I of the indictment, it simply gave the defendant additional information as requested by him, and as we also mentioned the Court instructed fully on the elements of conspiracy. Appellant 'objected specifically to an instruction given in response to a question by the jury. No objection was made at the time of giving this particular instruction nor was any exception taken. It is raised here for the first time. This Court will not consider such objections raised in this Court unless some specific matter is raised which merits our consideration. As we also said, we find no harmful error in the instructions as given by the Trial Court.

Specification XI. "Where it develops that a juror who sat on the trial had defective hearing and another went to sleep during the trial, a new trial should have been granted."

The Trial Court during the examination of the jury prior to the trial had ample opportunity to determine if the juror was hard of hearing, and if so, to what extent. No doubt it was the Court's determination that the juror was qualified as to his hearing as well as all other requirements.

The jury was under the continued direction and observation of the Court and had a juror been asleep for any noticeable time, the Court, we are positive, would have taken some action which would have remedied the situation. We might also add here that there is nothing in the record to indicate that any objection, on the part of the appellant, was made at the time of the trial. In fact, many of the alleged errors are raised here for the first time, having been passed without objection at the time of the trial.

Specification XII. "The Court erred in failing to grant judgment of acquittal on the conspiracy count when the jury acquitted Irving Shayne of all the substantive counts. There cannot be a single conspirator."

 There is no merit in the contention that because of the acquittal of Irving Shayne on the substantive counts the Court should have granted judgment of acquittal on the Conspiracy charge.

Judgment affirmed.