**Lawrence L. McLAUGHLIN,
Petitioner,**

v.

**Thomas L. CARROLL, Warden, and
Attorney General of the State of
Delaware, Respondents.**

No. 02–182.

United States District Court,
D. Delaware.

July 8, 2003.

494

Lawrence L. McLaughlin, pro se Petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, for Respondents.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Petitioner Lawrence L. McLaughlin is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I.2) For the reasons that follow, the court will dismiss the petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 1996, petitioner Lawrence L. McLaughlin went to visit his ex-girlfriend at her home in Dover, Delaware. When she refused to let him into her home, he tore a screen and climbed through her living room window. Upon entering, petitioner and his ex-girlfriend argued and he hit her on the head with a beer bottle, cutting her ear and causing the bottle to break. *See McLaughlin v. State*, No. 416, 1997, 719 A.2d 489, 1998 WL 665056 (Del.1998). In August 1996, petitioner was charged in a seven-count indictment with two sets of charges originating from the June incident: (1) burglary in the second degree, a felony in violation of 11 Del.Code Ann. § 825; and (2) assault in the second degree, a felony in violation of 11 Del.Code Ann. § 612. (D.I. 11, Exh. 6: Indictment by the Grand Jury).

At trial in February 1996, the State introduced evidence of two prior incidents involving petitioner and his ex-girlfriend. The first incident was a burglary committed by petitioner in December 1995. Petitioner pled guilty to this burglary on June 6, 1996, and was ordered to have no contact with his ex-girlfriend. The second incident occurred in March 1996, when petitioner kicked in the back door of his ex-girlfriend's home and started to argue with her. His former girlfriend's roommate provided eye witness testimony of this incident. The trial court performed a *Getz* analysis to determine whether to admit this evidence under Rule 404(b) of the Delaware Rules of Evidence, and finally did admit the evidence of both these prior acts over petitioner's objections. *See McLaughlin v. State*, 719 A.2d 489, 1998 WL 665056, at *1. On February 11, 1997, petitioner was convicted by a Delaware Superior Court jury of second degree assault and second degree burglary, but he was found not guilty as to aggravated menacing and possession of a deadly weapon during the commission of a felony. The State entered a *nolle prosequi* on the remaining three charges of aggravated menacing, offensive touching, and criminal mischief. *See McLaughlin v. State*, No. 262, 2001, 784 A.2d 1081, 2001 WL 1388639 (Del. Oct. 31, 2001).

On February 27, 1997, the State used these two convictions (burglary in the second degree and assault in the second degree), a 1992 North Carolina felony conviction for the delivery of cocaine, and a 1993 North Carolina felony conviction for breaking and entering a motor vehicle as the basis for a motion to declare the petitioner an habitual offender pursuant to 11 Del.Code Ann. § 4214(b). (D.I. 11, Exh. 3: Legal Documentation in Support of Applicant's Op. Br., Aug. 14, 2001); *see State v. McLaughlin*, No. 9606012699, 1997 WL 718658 (Del.Super.Ct. Aug. 8, 1997). A hearing on this motion was held on April

18, 1997. (D.I. 11, Transcript of Proceedings, Apr. 18, 1997) After reviewing the habitual offender petitions, the court refrained from ruling on the habitual offender motion and ordered additional briefing on several issues: (1) whether the seven day period between the June 6, 1996 charge and the June 13, 1996 charge was adequate for rehabilitation, thereby rendering the June 13 charge appropriate to be used as a basis for habitual offender status; (2) whether the imposition of a life sentence in this case violated the Eighth Amendment; and (3) whether the 1992 North Carolina felony conviction could be used to determine habitual offender status. *State v. McLaughlin*, 1997 WL 718658 at *1-3.

On July 17, 1997 petitioner's trial counsel filed a motion for new trial alleging: (1) that the Superior Court erred by admitting evidence of prior bad acts; and (2) that the Superior Court erred by failing to instruct the jury on lesser included offenses. (D.I. 11, "Motion New Trial") On August 8, 1997, the Superior Court denied this motion as untimely because it was not filed within seven days of the guilty verdict as required by Rule 33 of the Superior Court Rules of Criminal Procedure. *State v. McLaughlin*, 1997 WL 718658, at *3.

At the same time, the Superior Court ruled on the habitual offender motion, and addressed the three issues that were additionally briefed. First, the court reviewed relevant caselaw concerning the pre-requisites for habitual offender status. The court found that there must be three successive convictions, each of which must occur after the sentencing on the previous one with some chance for rehabilitation after each sentence. *Id.* at *1. The court analyzed the requirement of "some chance for rehabilitation" and held that seven days provided sufficient opportunity for the petitioner "to reform his conduct through the previous sentence imposed."

*Id.* at *2. Second, the court followed *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), and held that imprisonment cannot be viewed as "cruel and unusual" for Eighth Amendment purposes, and that the sentence of life imprisonment "pursuant to a recidivism statute such as the one in Delaware has also been found to be constitutionally proportionate by the United States Supreme Court." *McLaughlin*, 1997 WL 718658, at *3. Further, the court held that once the State establishes habitual offender status under 11 Del.Code Ann. § 4214(b), a court cannot consider mitigating factors and has no sentencing discretion. *Id.* Finally, the court noted that a conviction in a foreign jurisdiction can be used to determine habitual offender status if the prior conduct of the petitioner corresponds to a felony in the Delaware Criminal Code. *Id.*

To provide the petitioner the opportunity to respond to the issues surrounding the 1992 North Carolina conviction in light of the standards clarified in the then newly-decided *Morales v. State*, 696 A.2d 390 (Del.1997)(when considering habitual offender status involving any prior predicate felony convictions, prosecution must provide not only the underlying indictment or information, but also text of guilty plea), the court scheduled a hearing for September 5, 1997. *McLaughlin*, 1997 WL 718658, at *3. On September 5, 1997, petitioner was sentenced as an habitual offender to life in prison. *See McLaughlin v. State*, 784 A.2d 1081, 2001 WL 1388639, at *1.

Petitioner appealed his conviction and sentence, raising one issue: the Superior Court committed reversible error by admitting evidence of two prior bad acts under Rule 404(b) of the Delaware Rules of Evidence. *McLaughlin v. State*, No. 416, 1997, 669 N.Y.S.2d 75, 1998 WL 665056, at *1 (Del. Sept. 14, 1998). In

affirming the Superior Court's judgment, the Delaware Supreme Court reviewed the Superior Court's admission of the 404(b) evidence for abuse of discretion, and analyzed its decision under *Getz v. State*, 538 A.2d 726, 734 (Del.1988). Petitioner's first argument was that the no-contact order should have been admitted without the June 6, 1996 burglary conviction. The Superior Court noted that this argument was never raised at trial. Although the court cited Supreme Court Rule 8 and stated that it "will not consider matters that were not raised below," the court did conclude that the Superior Court's decision to admit both the conviction and no-contact order was supported by the record. *McLaughlin*, 719 A.2d 489, 1998 WL 665056, at *2.

Petitioner's second argument was that the eye witness testimony failed to satisfy the *Getz* requirement of "plain, clear and conclusive" evidence, and that its only value was to establish him as a bad person. Further, petitioner claimed that the trial court erred in failing to give a limiting jury instruction. *McLaughlin*, 719 A.2d 489, 1998 WL 665056, at *1. Although the Delaware Supreme Court agreed and found that the Superior Court erred in failing to conduct a complete *Getz* analysis and in failing to give a limiting instruction, the Supreme Court determined that such error was harmless. The court held that the testimony provided by petitioner's ex-girlfriend's roommate satisfied the "plain, clear and conclusive" standard because it was direct eye witness testimony, and because the March incident was less than three months before the charged crime. Finally, the Delaware Supreme Court reviewed the entire record and determined that there was substantial evidence to sustain petitioner's conviction and that the failure to give a limiting instruction was harmless beyond a reasonable doubt. *Id.* at *2.

On October 18, 1999, petitioner filed a "Motion for the Correction of an Illegal Sentence/Rule 61 pursuant to Rule 35(a) and 61" (D.I. 11, Sep. Mem. "Correction of an Illegal Sentence or a Sentence imposed in an illegal manner pursuant to Superior Court Criminal Rules 35(a) and alternatively Rule 61 postconviction relief this is Defendant's separate memorandum in the support of this petition") alleging: (1) he was denied due process at sentencing because he was never informed that his 1992 North Carolina felony drug conviction *nolo contendre* plea could later be used to enhance his sentence; (2) his trial counsel failed to contact his North Carolina defense attorney to determine "whether or not he could have been of any assistance;" (3) both his trial and appellate attorneys were ineffective because they failed to request the Superior Court to instruct the jury regarding lesser included offenses; and (4) the Superior Court relied upon an "impermissible basis" when it sentenced him to life in prison. (D.I. 11, Sep. Mem. "Correction of an Illegal Sentence or a Sentence Imposed in an Illegal Manner Pursuant to Superior Court Criminal Rules 35(a) and Alternatively Rule 61 Postconviction Relief this is Defendant's Separate Memorandum in the Support of this Petition"); *see McLaughlin v. State*, 784 A.2d 1081, 2001 WL 1388639, at *1. The Superior Court treated these matters separately. (D.I. 11, Letter from Super. Ct.) The portion of the motion pertaining to Rule 35 was handled as a motion for correction of an illegal sentence and was denied on January 10, 2000. (*Id.*)

The portion of the motion pertaining to the motion for post-conviction relief was referred to a Superior Court Commissioner, who concluded that petitioner's request for post-conviction relief should be denied. *State v. McLaughlin*, ID No. 9606012699, Comm'rs Report and Recommendation (Del.Super.Ct. Dec. 12, 2000). With re-

spect to the allegations of ineffective assistance of counsel, the Commissioner analyzed claims two and three under the *Strickland* test and concluded that counsel acted within the *Strickland* standard of reasonableness and that petitioner did not demonstrate actual prejudice. *Id.* at 9. The Commissioner dismissed claims one and four as being procedurally barred by Superior Court Criminal Rule 61(i)(3) because petitioner failed to raise these claims either during the trial or on direct appeal, and he failed to allege cause and prejudice for the default. *Id.* at 6, 10. On May 16, 2001, the Superior Court adopted the Commissioner's report and denied petitioner's post-conviction motion. *State v. McLaughlin,* ID No. 9606012699 (Del.Super.Ct. May 16, 2001).

Petitioner appealed the Superior Court's denial of his post-conviction relief motion, asserting only one claim that he raised in his post-conviction motion: that his trial and appellate counsel were ineffective because they each failed to request the Superior Court to instruct the jury regarding lesser included offenses. *McLaughlin v. State,* No. 262,2001, 784 A.2d 1081, 2001 WL 1388639 (Del.Super.Ct. Oct. 31, 2001). The Delaware Superior Court reviewed the record and determined that trial counsel's decision not to request instructions on lesser included offenses did not fall below the *Strickland* standard of reasonableness. *Id.* at *2.

Petitioner also raised two new claims on post-conviction appeal. First, he alleged that the arrest warrants, indictment, and habitual offender motion were "invalid and unconstitutional" documents because they lacked the proper court seals. Second, petitioner alleged that the two sets of charges stemming from the two incidents on June 13, 1996, were improperly joined in one indictment. Applying Supreme Court Rule 8, the Delaware Supreme Court reviewed these claims only for plain

error because petitioner did not raise these claims in his post-conviction motion. *Id.* The Delaware Supreme Court found no evidence in the record of plain error with respect to either claim. Moreover, the court noted that Delaware law permits two or more offenses to be joined in the same indictment if they are of similar character. The court concluded that settled Delaware law controlled these issues, and that the trial court did not abuse its discretion with respect to either claim. Thus, the court affirmed the Superior Court's denial of petitioner's Rule 61 motion. *Id.*

Petitioner's application for federal habeas relief is now before the court. The respondents request the court to deny it on the grounds that one claim is not cognizable on federal habeas review, and that the remaining claims are procedurally barred from federal habeas review.

## III. GOVERNING LEGAL PRINCIPLES

### A. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the applicable standard for federal courts to apply when reviewing federal habeas petitions asserting the same issues adjudicated on the merits in state courts. The AEDPA states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Third Circuit requires federal courts to utilize a two-step analysis when applying this standard. *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 880 (3d Cir.1999)(en banc); *see also Werts v. Vaughn,* 228 F.3d 178 (3d Cir.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001). The first step requires federal courts to identify the applicable Supreme Court precedent and then determine whether the state court decision was contrary to this clearly established Supreme Court precedent. *Matteo,* 171 F.3d at 888. "Relief is appropriate only if the petitioner shows that the 'Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.'" *Werts,* 228 F.3d at 197(quoting *O'Brien v. Dubois,* 145 F.3d 16, 24–25 (1st Cir.1998)). The petitioner cannot merely demonstrate "that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo,* 171 F.3d at 888. Under this standard, habeas relief cannot be granted if the federal court merely disagrees with a reasonable state court interpretation of the applicable precedent. *Id.*

If the federal court concludes that the state court adjudication is not contrary to the Supreme Court precedent, the court must then determine whether the state court judgment rests upon an objectively unreasonable application of clearly established federal law, as determined by the United States Supreme Court. *Id.* at 880. This analysis involves determining "whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justi-

fied. If so, then the petition should be granted." *Id.* at 891. Moreover, "in certain cases it may be appropriate to consider the decisions of inferior federal courts as helpful amplifications of Supreme Court precedent." *Id.* at 890. However, once again, a federal court's mere disagreement with the state court's decision does not constitute evidence of an unreasonable application of Supreme Court precedent by a state court. *Werts,* 228 F.3d at 197. Rather, the appropriate inquiry is "whether the state court's application of Supreme Court precedent was objectively unreasonable." *Id.* (citations omitted). For example, if the state court identifies the correct legal principle, "but unreasonably applies that principle to the facts of the prisoner's case," then habeas corpus relief is appropriate. *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■■■ The AEDPA requires a federal court to presume that a state court's determinations of fact are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000), *cert. denied,* 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001). When the standard is applied to an ineffective assistance of counsel claim, which involves a mixed question of law and fact, the presumption of correctness still prevails for the portion of the state court's determination regarding historical facts. *Lawrie v. Snyder,* 9 F.Supp.2d 428, 434 (D.Del.1998); *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Campbell,* 209 F.3d at 286.

**B. Exhaustion and Procedural Default**

The federal habeas statute states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Before seeking habeas relief from a federal court a petitioner must first exhaust remedies available in the state courts. The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts,* 228 F.3d at 192.

■ The petitioner must give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim was fairly presented to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec.22, 2000). However, if the petitioner raised the issue on direct appeal, then he does not need to raise the same issue again in a state post-conviction proceeding. *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997); *Evans v. Ct. C.P., Del. County, Pa.,* 959 F.2d 1227, 1230 (3d Cir. 1992) (citations omitted).

■ To fairly present a federal claim for purposes of exhaustion, a petitioner must present to the state's highest court a legal theory and facts that are substantially equivalent to those contained in the federal habeas petition. *Coverdale,* 2000 WL 1897290, at *2; *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996). It is not necessary for the petitioner to identify a specific constitutional provision in his state court brief, provided that "the substance of the ... state claim is virtually indistinguishable from the (constitutional) allegation raised in federal court." *Santana v. Fenton,* 685 F.2d 71, 74 (3d Cir.1982) (quoting *Biscaccia v. Attorney General of New Jersey,* 623 F.2d 307,312 (3d Cir. 1980)). Rather, a petitioner may assert a federal claim without explicitly referencing a specific constitutional provision by: (1) relying on pertinent federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in like fact situations; (3) asserting a claim in terms so particular as to call in mind a specific right protected by the Constitution; or (4) alleging a pattern of facts that is well within the mainstream of constitutional litigation. *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir.1999); *Evans,* 959 F.2d at 1232. Provided that the petitioner did, in fact, present such issues to the court, the "fairly presented" requirement is satisfied even if the state court did not actually consider or discuss the issues in the federal claim. *See Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir.1984).

■ If a petitioner failed to exhaust state remedies and state procedural rules preclude further relief in the state courts, the exhaustion requirement is deemed satisfied because there is no available state remedy. *Lines,* 208 F.3d at 160; *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir.2001); *see Teague v. Lane,* 489 U.S. 288, 297–98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). However, even though these claims are treated as exhausted, they are procedurally defaulted. *Lines,* 208 F.3d at 160. In

addition, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but, once again, procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Werts*, 228 F.3d at 192.

 A federal court may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice or a fundamental miscarriage of justice. *McCandless*, 172 F.3d at 260; *Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1999); *Caswell v. Ryan*, 953 F.2d 853, 861–62 (3d Cir.1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494, 106 S.Ct. 2639. However, if the petitioner does not allege cause for the procedural default, then the federal court does not have to determine whether the petitioner has demonstrated actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

 Alternatively, a federal court may excuse procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir.2001). In order to demonstrate a miscarriage of justice, the petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 537, 106 S.Ct. 2661. A petitioner establishes actual innocence by proving that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Sweger v. Chesney*, 294 F.3d 506, 522–24 (3d Cir.2002). The miscarriage of justice exception applies only in extraordinary circumstances and is appropriate only when actual innocence is established, rather than legal innocence. *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

## IV. DISCUSSION

Petitioner's model § 2254 form alleges three grounds for federal habeas relief:[1]

(1) Ineffective assistance of counsel at trial, sentencing, and direct appeal. Special factors of North Carolina plea militates an implied right. Trial court relied on an impermissible basis for exceeding sentence upon defendant.

(2) Trial court committed reversible error when it admitted evidence of bad acts[,] [and failed to question] the credibility of witness and witnesses. Never gave jury instructions of Lesser Included Offense. (But the fact of the matter [is that] Defendant was/is convicted of burglarizing his own house where he lived [e]ven though there was a no-contact order.) Defendant and victim had an argument [because] she decided not to let him in[,] so he climbed through the window. And [regarding the] assault, she wasn't seriously injured. Citing Transcript 4/18/97 p. 4.

(3) Waiver of Indictment, altered documents, and altered dated sentence im-

---

1. Because the court disagrees with the respondents' summary of petitioner's claims, the claims are presented verbatim in petitioner's language, except where duly noted.

posed against the spirit and intent [of 11 Del. Stat. Ann. § 4214(b) ], and prosecutorial misconduct, improper remarks, credibility of victim and state's witnesses. It's impossible for defendant to have been indicted on these charges. Check dates along with docket sheet. (D.I.2) Petitioner also filed a document titled "Defendant's Separate Memorandum in Support of this Petition" in which he asserts nine arguments. (D.I.6) Although respondents characterize these arguments as additional claims, careful review of the memorandum illustrates that they merely support the various claims raised in the model § 2254 form.[2] (*Id.*)

The respondents summarize petitioner's claims and assert their responses as follows:

(1) Summary: Counsel was ineffective at trial and on direct appeal for not challenging the admission of the North Carolina plea.

Response: Petitioner procedurally defaulted this claim because he failed to brief the claim to the Delaware Supreme Court.

(2) Summary: The trial court erroneously admitted evidence of prior bad acts and failed to deliver an unspecified lesser included offense instruction.

Response: The claim involves a violation of state law and therefore fails to provide a basis for federal habeas relief. Further, to the extent that petitioner's claim could be construed as alleging a violation of federal or constitutional law,

the claim is unexhausted and thus procedurally barred.

(3) Summary: The indictment was somehow improperly altered, the sentence was improper, and the respondents engaged in prosecutorial misconduct.

Response: Although petitioner exhausted state remedies with respect to these claims, they are still procedurally barred. Delaware Supreme Court Rule 8 precludes federal habeas review because petitioner presented these claims on appeal without first presenting them to the Superior Court.

(4) Summary: From a reading of McLaughlin's "supplemental memorandum" it appears that McLaughlin raises the following additional claims: 1) an improper waiver of indictment; 2) the sentence was disproportionate and thus illegal; 3) there was inconsistent testimony presented at trial; 4) the arrest was illegal because there was no seal on the warrant; 5) the indictments were improperly consolidated; 6) there were improper documents submitted in support of the habitual offender motion; and 7) counsel was ineffective in not advancing claims four, five, and six.

Response: The additional arguments contained in "Defendant's Separate Memorandum in Support of this Petition" should be dismissed for two reasons. First, this memorandum does not comply with Rule 2(c) of the Rules Governing 2254 Habeas Petitions. Second, these additional claims were not pre-

---

**2.** Arguments one and two explain issues related to the waiver of indictment claim contained in ground three of the original petition. (D.I.6) Argument three supports the claim raised in ground three that petitioner's sentence was imposed against the spirit and intent of 11 Del. Stat. Ann. § 4214(b). (*Id.*) Argument four describes the alleged prosecutorial misconduct and other acts alleged in ground three. (*Id.*) Argument five discusses

the claim raised in ground two that the trial court committed reversible error by considering petitioner's prior bad acts. (*Id.*) Argument six asserts several facts supporting his ineffective assistance of counsel claim raised in ground one. Finally, arguments seven through nine assert facts supporting petitioner's claims relating to altered documents contained in ground three. (*Id.*)

sented to the state supreme court, thus, although petitioner's failure to exhaust state remedies can be excused, he has not established cause for his procedural default. (D.I. 18 at 3,4,10)

## A. Ground One

The respondents summarize petitioner's first ground as only containing one assertion: that counsel provided ineffective assistance of counsel for failing to challenge the admission of the 1992 North Carolina plea. They then assert that petitioner's claim of ineffectiveness of counsel is procedurally barred because he failed to brief this claim to the Delaware Supreme Court. The court does not interpret petitioner's assertion in a similar manner and, thus, disagrees that the claim is procedurally barred.[3]

 The respondents acknowledge that it is "well-settled that *pro se* submissions are entitled to liberal rules of construction." (D.I. 18 at 9–10) As such, the court must read the original petition and the subsequent explanatory "Defendant's Separate Memorandum in Support of this Petition" in conjunction with each other in order to correctly assess petitioner's arguments.[4] The court interprets petitioner's statements in claim one as asserting three *separate and distinct* claims:

(1) ineffective assistance of both trial and appellate counsel for

(a) failing to request jury instructions regarding lesser included offenses;

(b) refusing a plea agreement without petitioner's knowledge; and

(c) failing to call key witnesses;

(2) the North Carolina plea was considered in error because special factors require an implied right; and

(3) the trial court erroneously relied on the habitual offender status when it exceeded the sentence.[5]

Accordingly, the court will separately review each claim asserted in ground one.

### 1. *Ineffective assistance of counsel*

#### a. Failure to request a jury instruction regarding lesser included offenses

Petitioner asserts that both trial and appellate[6] counsel rendered ineffective assistance because they failed to request a jury instruction regarding lesser included offenses.[7] Petitioner asserts that this fail-

---

**3.** In reaching this conclusion, the court acknowledges that petitioner's lengthy memorandum in support of his petition is somewhat confusing, thereby making it difficult to truly discern the independent arguments.

**4.** Because petitioner only explains or provides further support for the claims contained in the model § 2254 form he has not submitted a successive petition. *See Slack v. McDaniel*, 529 U.S. 473, 476, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

**5.** The Third Circuit prohibits a court from "misread[ing] habeas petitions in order to split single claims and conduct a separate exhaustion analysis for each." *See Henderson v. Frank*, 155 F.3d 159, 165 (3d Cir.1998). Although petitioner grouped these claims as a single "ground one," the court is not "splitting" a single claim. These three statements

are individual and distinct legal claims, as evidenced by petitioner's supporting memorandum. (D.I.6)

**6.** The court notes that although the model § 2254 form alleges ineffective assistance of trial and appellate counsel, the "Defendant's Separate Memorandum in Support of this Petition" only addresses the alleged ineffective assistance of *trial* counsel. (D.I.6) Because the court interprets the separate memorandum as providing support for the petition, it does not view this omission as purposely deleting and waiving the ineffective assistance of *appellate* counsel. This conclusion is supported by the fact that petitioner alleged both counsels' ineffective assistance in his state post-conviction actions.

**7.** Petitioner claims that the Superior Court should have instructed the jury on the of-

ure "violated [his] due process [rights] ... and deprived him of a fair trial." He further states that "in all probability the jury would have acquitted [him] of the greater offense of burglary second." (D.I.6)

The respondents' argument that petitioner procedurally defaulted his ineffective assistance of counsel claim because he failed to brief it to the Delaware Supreme Court is dependent upon their characterization of the claim as relating to the North Carolina plea. Because the court concludes that the alleged ineffective assistance of counsel was the failure to seek or request a jury instruction regarding lesser included offenses, rather than the failure to object to the admission of the North Carolina plea, the respondents' procedural default argument no longer applies.

■■■ A thorough review of the record reveals that petitioner properly asserted this claim in his Rule 61 post-conviction motion to the Delaware Superior Court and then appealed the denial of such motion to the Delaware Supreme Court. The Delaware Supreme Court reviewed the ineffective assistance of counsel claim on the merits, and subsequently affirmed the Superior Court's judgment. Thus, petitioner exhausted state remedies, and because the petitioner did, in fact, brief this issue to the state supreme court, respondents' procedural default argument fails.[8]

The fact that the Delaware state courts reviewed petitioner's ineffective assistance of counsel claim on the merits limits this court's review of the claim to determining whether the Delaware Supreme Court's

rejection of the claim was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); *Williams,* 529 U.S. at 412, 120 S.Ct. 1495; *Lawrie,* 9 F.Supp.2d at 434. The "clearly established Federal law" which governs claims of ineffective assistance of counsel is the standard enunciated by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny. *See Hull v. Kyler,* 190 F.3d 88, 105 (3d Cir.1999). To prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate both that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) counsel's deficient performance actually prejudiced the petitioner's case. In other words, there is a reasonable probability that, but for counsel's faulty performance, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 687–88, 692–94, 104 S.Ct. 2052; *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir.2002).

■■■ To satisfy the first prong of the *Strickland* test, the petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. A court must be highly deferential to counsel's reasonable strategic decisions when analyzing an attorney's performance under this standard. *Id.* at 689, 104 S.Ct. 2052. For example, in *Strickland* the Supreme Court noted:

A fair assessment of attorney performance requires that every effort be

fenses of Criminal Trespass in the Second Degree, Criminal Trespass in the Third Degree, and Assault in the Third Degree. *McLaughlin v. State,* 2001 WL 1388639, at *2 n.8 (Del. Oct. 31, 2001).

8. In a footnote, the Delaware Supreme Court stated that the ineffective assistance of coun-

sel claim would have been procedurally barred under Rule 61(i)(3). However, because the Delaware Supreme Court did review the merits of the claim under *Strickland* and did not let the procedural default foreclose its review, this court is required to review the claim under the standard of review prescribed by 28 U.S.C. § 2254(d)(1).

made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 688–89, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). The reasonableness of an attorney's actions may be influenced by the defendant's own statements or actions, and if a defendant gives counsel reason to believe that pursuing certain investigations would be fruitless, the attorney's failure to pursue such investigations cannot later be challenged as unreasonable. *Id.* at 691, 104 S.Ct. 2052.

The second prong of the *Strickland* test requires the petitioner to affirmatively show that counsel's deficient performance prejudiced the petitioner's case. *Id.* at 692–93, 104 S.Ct. 2052. A petitioner establishes prejudice by demonstrating that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. A court must consider the totality of evidence before the judge or jury when assessing the prejudice from counsel's errors. *Id.* at 696, 104 S.Ct. 2052. Generally, prejudice includes a showing that counsel's errors deprived petitioner of a fair and reasonable trial. *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

■ Applying these standards, the court must now determine whether the Delaware courts applied a rule of law contrary to that announced in *Strickland.* After reviewing the Superior Court's denial of petitioner's ineffective assistance of counsel claim and the Supreme Court's decision affirming this decision, this court concludes that the Delaware state courts' review of petitioner's claim was not contrary to *Strickland.* Both courts clearly articulated the two-step analysis required under *Strickland.* The Superior Court Commissioner evaluated petitioner's claims under the objective standard of reasonableness pronounced in *Strickland* and concluded that "[a] th[o]rough review of the record in this matter including the affidavits of [petitioner's] trial and appellate counsel demonstrate that counsel acted well within the standards required by *Strickland.*" (Super. Ct. Commr.'s Report, ID No. 9606012699, at 9 (Dec. 12, 2000)) The Commissioner also concluded that petitioner failed the second prong of *Strickland* because he did not "make concrete allegations of actual prejudice or . . . substantiate said allegations of prejudice." *Id.* Further, the Delaware Supreme Court reviewed the record and concluded that the attorneys' decisions not to request instructions on lesser included offenses did not fall below an objective standard of reasonableness. *McLaughlin v. State,* 784 A.2d 1081, 2001 WL 1388639, at *2. Hence, neither of the state courts applied a rule of law "contrary to" *Strickland.*

■ However, this conclusion does not end the inquiry prescribed by 28 U.S.C. § 2254(d) because the court must also analyze whether the Delaware courts' application of *Strickland* to petitioner's claim was objectively unreasonable. The appropriate question to ask is whether the "state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland.*" *Werts,* 228 F.3d at 204.

A thorough review of the state court decisions indicate that the Delaware state courts' denial of petitioner's ineffective assistance of counsel claim was not an unreasonable application of *Strickland*. Although petitioner correctly states "a defendant is entitled to an instruction on [a] lesser included offense if the evidence would permit a jury rationally to acquit Defendant of greater offense and convict on a lesser [offense],[9] he fails to demonstrate any evidence that would permit such a rational acquittal." (D.I. Argument VI) His submissions to the Delaware courts contain only general statements that counsel 'failed to see ... the meritorious issues of criminal trespass in the second and third degree' and that " trial counsel was specifically ineffective for failing to seek or request the trial court to instruct the jury on lesser included offenses of criminal trespass, burglary third degree, and assault in the third degree."[10] (D.I. 6, Mem. "Correction of an Illegal Sentence ... and Alternatively Rule 61 Postconviction Relief" at 6; D.I. 20, "Legal Documentation in Support of Appellant's Op. Br." Argument IV). Similarly, his habeas petition only contains general unsubstantiated statements such as "in all probability the jury would have acquitted the Defendant of the greater offense of Burglary Second" and that "the evidence and testimony by the state and witnesses ... show[ed] minor injuries and were insufficient to sustain the charge of Assault Second." (D.I. 6 Argument VI)

These unsupported conclusory allegations do not satisfy the requirement under Delaware law that the petitioner show some credible basis in the trial evidence entitling him to such lesser included instructions. *See* 11 Del.Code Ann. § 303(a); *Ward v. State*, 366 A.2d 1194, 1196 (Del.1976). Further, these general allegations do not constitute "clear and convincing evidence" sufficient to rebut the presumption of correctness this court must provide to the state courts' explicit and implicit findings. *See Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir.2000). First, the Delaware Superior Court Commissioner thoroughly reviewed the record and Rule 61(g)(2) affidavits[11] and found that petitioner's accusations of ineffectiveness were "self serving" and "after the fact," and that the attorney's explanations of their strategic trial and appellate decisions were "more compelling." Further, the Delaware Supreme Court affirmed this decision after it, too, thoroughly reviewed petitioner's allegations and counsels' affidavits. Commissioner's Report and Recommendation, ID No. 9606012699 at 9 (Del.Super.Ct. Dec. 12, 2000). Thus, under *Weeks*, the Delaware courts' implicit factual finding that petitioner's claims were unsubstantiated must be accorded the highly deferential presumption of correctness required by § 2254(e), especially in light of the thorough review the Delaware courts accorded to the Rule 61(g)(2) affidavits.

Unfortunately, this court does not have the two Rule 61(g)(2) attorney affidavits to

---

**9.** Citing to *Gates v. State*, 424 A.2d 18, 21 (Del.1980); 11 Del.Code Ann. § 206(c); Supr. Ct.Crim. R. 31(c).

**10.** The record is not entirely clear as to which lesser included offenses petitioner believes counsel should have requested. However, the Delaware Supreme Court discussed the offenses of Criminal Trespass in the Second and Third Degree and Assault in the Third Degree. Because these offenses are the identical ones

discussed in petitioner's habeas petition, this court will only deal with these three offenses as possible lesser included offenses.

**11.** If a motion for post-conviction relief alleges ineffective assistance of counsel, Superior Court Criminal Rule 61(g)(2) provides that the judge may direct the attorney who represented the movant to respond to such allegations.

review on its own. However, an independent review of the record illustrates that petitioner's attorneys acted reasonably in deciding not to request an instruction on lesser included offenses. The Superior Court used pattern jury instructions for the burglary and assault charges. (D.I. 13, Trans. of Tr. R., Vol. F at F–4) Although pattern jury instructions are intended as guidelines, they must still "give a correct statement of the substance of the law" and must be reviewed under well-settled standards governing jury instructions. *Cabrera v. State*, 747 A.2d 543, 544 (Del.2000).

 An instruction on lesser included offenses is required when the evidence would permit a jury to rationally find the defendant guilty of the lesser included offense and acquit him of the greater. *Beck v. Alabama*, 447 U.S. 625, 635–38, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *see* 11 Del.Code Ann. § 206(c). Delaware caselaw incorporates this requirement and specifies four requirements to determine when a defendant is entitled to a jury instruction on lesser included offenses:

(1) the defendant made a proper request;

(2) the lesser included offense contains some, but not all, of the elements of the charged offense;

(3) the elements differentiating the two offenses must be in dispute; and

(4) there is some evidence that would allow the jury to rationally acquit the defendant on the greater charge and convict on the lesser charge.

*Henry v. State*, 805 A.2d 860 (Del.2002). Petitioner agrees that the only requirement at issue is number four: whether there is some evidence that would allow the jury to rationally acquit the defendant on the greater charge and convict on the lesser charge. (D.I. 6 Argument VI) [12]

Comparing the actual jury instructions with petitioner's lesser included offenses illustrates that no evidence at trial could have rationally led the jury to acquit on the charged offenses. First, with respect to burglary in the second degree, the judge instructed the jury as follows:

In order to find the defendant guilty of burglary in the second degree, you must find that the following elements have been established beyond a reasonable doubt:

1. The defendant entered or remained unlawfully in a dwelling of [his ex-girlfriend] ... A person enters or remains unlawfully in a place when he has no license or privilege to be there; that is, he does not have the permission or consent of the owner of the place to be there.

2. The place where the defendant entered or remained unlawfully was a dwelling. The word "dwelling" under our Criminal Code means a building which is normally occupied by a person lodging therein at night. A building under our Criminal Code has its ordinary dictionary meaning.

3. The defendant acted knowingly. That is, he knew or was aware that the property involved was a dwelling, and that he was entering or remaining unlawfully in that dwelling.

4. The defendant intended to commit a crime in the dwelling. That is, it must have been the defendant's conscious object or purpose to commit some act which is defined in our Criminal Code as a crime.

---

12. The issue at hand is whether counsel's failure to make a proper request for a jury instruction on lesser included offenses constituted ineffective assistance of counsel. As such, requirement number one regarding such a request is not at issue.

In this case, the State contends that the defendant intended to commit the crime of assault in the second degree, as I will shortly define it; and you must find that the defendant intended to commit that offense in order to convict him of burglary in the second degree.

If, after the considering of all of the evidence, you find that the State has established beyond a reasonable doubt that the defendant, Lawrence E. McLaughlin, acted in such a manner as to satisfy all of the elements which I have just stated, at or about the date and place stated in the indictment, you should find the defendant guilty of burglary in the second degree.

If you do not so find, or if you have a reasonable doubt as to the guilt of the defendant, you must find the defendant not guilty of burglary in the second degree.

(D.I. 13, Trans. of Tr. R., Vol. F at F–108—F–115)

■■■ Burglary in the second degree requires the petitioner to have the "intent to commit a crime" inside the dwelling, whereas criminal trespass in the first and second degrees do not.[13] In the present case, the requisite intent was charged as the intent to commit assault. According to 11 Del.Code Ann. § 306(c) (2003), a person has the intent to commit a crime if he intended the natural and probable consequences of his act. This presumption is also reflected in Delaware case law. *See Plass v. State*, 457 A.2d 362 (Del.1983).

Petitioner appears to argue that because he did not intend to commit assault when he *entered* the dwelling, he was entitled to an instruction on criminal trespass in the first and second degrees. However, the requisite intent for burglary in the second degree must exist either at the time of entry or at the time he *remained* in the house unlawfully. The evidence supports the conclusion that he intended to commit assault once he *remained* in the house. On direct examination, petitioner's ex-girlfriend testified that they had a prior altercation earlier that same day, during which he grabbed her with a knife in his hand. Petitioner then returned later on, entered the home against his girlfriend's will, and started to argue with her. Because the jury is permitted to infer that petitioner intended the natural and probable consequences of his act, it was rational for them to conclude that he intended to commit assault once he remained in the dwelling. This conclusion is further supported by the fact that the jury did find petitioner guilty of assault in the second degree, which occurred in the same dwelling. In short, "the jury focused on the same factual issues negated by the lesser included offense of [criminal] trespass and specifically found the very facts necessary to support the burglary conviction." *See Gates v. State*, 424 A.2d 18,22 (Del.1980).

With respect to assault in the second degree, the judge instructed the jury that:

Count 2 of the indictment charges the defendant with assault in the second degree. In order to find the defendant guilty of assault in the second degree, you must find that all of the following

---

**13.** According to 11 Del.Code Ann. § 825, a person is guilty of burglary in the second degree when the person knowingly enters or remains unlawfully:

(1) In a dwelling with intent to commit a crime therein

According to 11 Del.Code Ann. § 823, a person is guilty of criminal trespass in the first degree when the person knowingly enters or remains unlawfully in a dwelling . . .

According to 11 Del.Code Ann. § 822, a person is guilty of criminal trespass in the second degree when the person knowingly enters or remains unlawfully in a building . . .

elements have been established beyond a reasonable doubt:

1. The defendant recklessly caused physical injury to [his ex-girlfriend]. Physical injury means impairment of physical condition or substantial pain.

2. The defendant caused the physical injury by striking [his ex-girlfriend] with a dangerous instrument. Dangerous instrument means any instrument, article, or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury.

3. The defendant acted recklessly. A person acts recklessly with respect to an element of an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the elements exist or will result from the conduct. The risk must be of such a nature and degree that such disregard therefore constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

If, after considering all of the evidence, you find that the State has established beyond a reasonable doubt that the defendant ... acted in such a manner as to satisfy all of the elements which I have just stated at or about the date and place stated in the indictment, you must find the defendant guilty of assault in the second degree.

If you do not so find, or if you have a reasonable doubt about the defendant's guilt, then you must find the defendant not guilty of assault in the second degree.

(D.I. 13, Trans. of Tr. R., Vol. F at F–108—F–115)

▮▮▮▮ Petitioner alleges that the evidence illustrates the charge of assault in the second degree was erroneous because his ex-girlfriend's injury was minor and minimal: he only "nick[ed]" her ear. (D.I. 20, "Legal Documentation in Support of Appellant's Opening Brief": Argument IV) Once again, petitioner incorrectly interprets the necessary elements for the crime of assault in the second degree. He believes that *serious* injury is required to be convicted of Assault in the Second Degree, whereas only *physical* injury is required for assault in the third degree.[14] (Emphasis added.) However, when a dangerous instrument is used to commit the injury, there is no requirement that such injury be serious. *See supra* n. 11. The very fact that petitioner used a dangerous instrument (beer bottle) to hit his ex-girlfriend on the head would prevent the jury from rationally acquitting him of Assault in the Second Degree.[15]

---

14. According to 11 Del.Code Ann. § 612, a person is guilty of assault in the second degree when:

(1) the person recklessly or intentionally causes serious physical injury to another person; or

(2) The person recklessly or intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument ...

According to 11 Del.Code Ann. § 612, a person is guilty of assault in the third degree when:

(1) The person intentionally or recklessly causes physical injury to another person; or

(2) With criminal negligence the person causes physical injury by means of a deadly weapon or a dangerous instrument.

15. The court notes that petitioner might believe his actions fit within 11 Del.Code Ann. § 612(2), which defines Assault in the Third Degree as an act where a person, with criminal negligence, uses a dangerous instrument to cause physical injury. However, there is no evidence that petitioner "fail[ed]to perceive a risk" that physical injury would result from his action. *See* 11 Del.Code Ann. § 231(d).

This analysis illustrates that petitioner was not entitled to jury instructions on the proposed lesser included offenses. Further, the jury instructions were correct statements of the law. All petitioner offers as evidence of ineffective assistance of counsel are unsupported allegations, which fail to overcome the presumption that the attorneys' decisions were due to "sound trial strategy." *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. As such, petitioner has failed to establish that his attorneys' performances fell below an objective standard of reasonableness.

Moreover, petitioner does not affirmatively show that counsels' allegedly deficient performances prejudiced his case. Despite his lengthy submission to this court, petitioner fails to explain how the outcome of the case would have been different had the attorneys requested this instruction. Without such a showing, petitioner fails the second prong of *Strickland.*

For these reasons, the court finds that petitioner's assertions regarding counsels' ineffective assistance of counsel fail to satisfy the *Strickland* standards. Accordingly, the court will deny petitioner's request for federal habeas relief with respect to this claim.

### b. Alleged refusal of plea agreement without petitioner's knowledge and failure to call key witnesses at trial

It appears that petitioner also asserts his attorneys rendered ineffective assistance of counsel for refusing a plea agreement with the state without his knowledge and for failing to call key witnesses at trial. (D.I. 6 Argument VI) Before reaching the merits of these claims, this court must determine whether petitioner satisfied the procedural requirements of the AEDPA with respect to the exhaustion of state remedies and procedural default.

Petitioner never raised these claims to the Delaware Superior Court in his original Rule 61 motion, thereby failing to exhaust state remedies.[16] This failure to exhaust is excused because the time for timely filing a Rule 61 motion expired on October 1, 2001, three years after his conviction became final. *See* Super. Ct.Crim. R. 61(i)(1). However, these claims are procedurally barred by Rule 61(i)(2) because they were not previously asserted in petitioner's original Rule 61 motion. *See* Super. Ct.Crim. R. 61(i)(2); *Mundy v. State,* 788 A.2d 131, 2001 WL 1636516 (Del.2001). Although such claims may be reconsidered if warranted in the "interest of justice," the "interest of justice" exception requires the movant to show that the trial court lacked the authority to convict or punish him. *See State v. Kirk,* 2001 WL 755942, at *2 (Del.Super.Ct.2001); *Maxion v. State,* 686 A.2d 148, 150 (Del. 1996). Petitioner has not demonstrated that the Delaware Superior Court lacked the authority to convict him. Moreover, these present claims were known, or should have been known, at the time petitioner filed his Rule 61 motion. Consequently, the "interest of justice" exception does not apply, and these claims are procedurally barred.[17]

---

**16.** Claims for ineffective assistance of counsel are not subject to the procedural default rule because the Delaware Supreme Court will not hear such claims for the first time on appeal. These issues are properly brought before the Delaware Superior Court in a Rule 61 motion for post-conviction relief. *See State v. Brown,* 2002 WL 130694, at *2 (Del.Super.Ct. Oct. 29, 2002); *Anderson v. State,* 2002 WL

187509, at *4 (Del.Super.Ct.2002); *Fetters v. State,* 436 A.2d 796 (Del.1981).

**17.** Even if these claims were not procedurally barred they are without merit. First, the only evidence regarding the alleged refusal of the plea agreement is petitioner's conclusory and unsupported allegation. The state court dockets are completely devoid of any mention of a plea agreement regarding the June 13,

### 2. *The improper use of the 1992 North Carolina plea and the improper categorization as an habitual offender*

As previously discussed, petitioner includes two additional claims in ground one of his model § 2254 form. First, he appears to assert that the 1992 North Carolina felony drug conviction by *nolo contendre* plea was improperly used to enhance his sentence. Second, he asserts that the trial court relied on an impermissible basis for exceeding sentence. Nothing in petitioner's submissions to this court further explain these statements. However, after reviewing state court documents, the court concludes that the alleged impermissible basis was petitioner's characterization as an habitual offender. (D.I.11, 20)

■ While these assertions are not completely and clearly explained by petitioner, they appear to correspond with two claims he raised in the Delaware Superior Court in his Rule 61 motion for post-conviction relief. The Superior Court denied these claims for being procedurally barred by Rule 61(i)(3) and petitioner did not raise the claims on post-conviction appeal to the Delaware Supreme Court. Consequently, petitioner did not exhaust state remedies because he failed to present these claims to the Delaware Supreme Court either on direct appeal or in a post-conviction proceeding. *See Lambert,* 134 F.3d at 513.

Further state review of these claims is foreclosed because the time for appealing the denial of post-conviction relief has expired. A notice of appeal must be filed within thirty days after entry of an order denying post-conviction relief. *See* Del. Supr. Ct. R. 6(a)(iii). Failure to file a notice of appeal within the thirty-day time limit deprives the Delaware Supreme Court of jurisdiction to hear the appeal. *See Carr v. State,* 554 A.2d 778, 779 (Del. 1989). The Delaware Superior Court denied petitioner's Rule 61 motion on May 16, 2001, more than two years ago. Thus, because the Delaware Supreme Court would dismiss an appeal filed at this late date for lack of jurisdiction, there is no available state remedy. As a result, petitioner's failure to exhaust state remedies is excused and the claims are deemed to be exhausted. *See Lines,* 208 F.3d at 160.

■ Nonetheless, even though petitioner's failure to exhaust these claims is excused, they are still procedurally defaulted for three reasons. First, petitioner raised these claims in his Rule 61 motion, but did not raise or brief them on appeal to the Delaware Supreme Court. *McLaughlin v. State,* 784 A.2d 1081, 2001 WL 1388639 (Del. Oct. 31, 2001). Under Delaware law, a claim raised by post-conviction motion but not subsequently raised in the text of petitioner's brief on post-

---

1996 convictions, and nothing else in the record indicates that such an agreement existed. Indeed, a thorough review of the record indicates that petitioner mistakenly believes the respondents' request to have a "truth in sentencing" guilty plea form removed from its evidence during trial refers to such a guilty plea. (D.I. 13 at F–26) However, this reference is to the guilty plea regarding his December 1995 burglary arrest, to which he pled guilty on June 6, 1996. (D.I. 13 at D–81) The reference is not to a plea agreement regarding the June 13, 1996 arrests. If no such

plea agreement existed, then the attorneys could not have refused it without petitioner's knowledge. The claim is therefore factually without merit, and this court would dismiss it for failing to establish that counsels' performances were deficient under *Strickland.* Further, with respect to the alleged failure call key witnesses, petitioner does not demonstrate how the testimony from such witnesses would have altered the outcome of the trial. As such, petitioner has failed to satisfy the *Strickland* requirement of prejudice. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

conviction appeal constitutes a waiver of that claim on appeal. *Stilwell v. Parsons,* 145 A.2d 397, 402 (Del.1958); *Murphy v. State,* 632 A.2d 1150, 1152 (Del.1993); *Somerville v. State,* 703 A.2d 629, 631 (Del. 1997). As a general rule, a federal district court cannot review questions of federal law decided by a state court if the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Jordan v. Snyder,* 2000 WL 52152, at *7 (2000). This rule applies for both substantive and, as here, procedural state laws. *Jordan,* 2000 WL 52152, at *7. However, "the decision of the last state court to which the petitioner presented his federal claims" must "clearly and expressly rely on an independent and adequate state ground."[18] *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546.

It is well established that Delaware's procedural rule deeming claims not raised on appeal as waived constitutes an independent and adequate state ground barring federal habeas review. *Carter v. Neal,* 910 F.Supp. 143, 151–52 (D.Del. 1995). The Delaware Supreme Court clearly and expressly relied on this rule when it said that "to the extent [petitioner] has failed to brief his other post-conviction claims, those claims are deemed abandoned and will not be addressed by this court." *McLaughlin v. State,* 784 A.2d 1081, 2001 WL 1388639, at *2 (citing to *Somerville v. State,* 703 A.2d 629, 631 (Del. 1997)). Accordingly, the court concludes the Delaware Supreme Court's refusal to address such claims because of this independent procedural bar constitutes a suffi-cient statement that these claims are procedurally defaulted.

■ Similarly, because petitioner did not present these claims on post-conviction appeal, they are also procedurally barred under rule 61(i)(4):

> Former Adjudication. Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration is warranted in the interest of justice.

Super. Ct. R.Crim. P. 61(i)(4). Reconsideration is warranted in the interest of justice where "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish the accused." *Cruz v. State,* No. 446,1995, 676 A.2d 901, 1996 WL 21060 (Del. Jan. 10, 1996) (quoting *Flamer v. State,* 585 A.2d 736, 746 (Del.1990)). Nothing in the record indicates subsequent legal developments affecting the trial court's authority. Accordingly, these claims are procedurally barred under Rule 61(i)(4).

■ Finally, these claims are procedurally defaulted under Rule 61(i)(3) because petitioner did not raise them on direct appeal:

> Procedural Default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows
>
> (A) Cause for relief from the procedural default and

---

18. This rule does not apply, however, when the petitioner failed to exhaust state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman,* 501 U.S. at 735 n. 1, 111 S.Ct. 2546.

(B) Prejudice from violation of the movant's rights.

Super. Ct. R.Crim. P. 61(i)(3); *see Bialach v. State*, 773 A.2d 383, 386 (Del.Supr.2001). Petitioner did not present these claims in his direct appeal to the Delaware Supreme Court, and he has offered no reason for failing to do so. Thus, the court concludes that these two claims are procedurally barred by Rule 61(i)(3).

■ Having determined that these claims are procedurally defaulted, the court must next consider whether petitioner has articulated any cause for this procedural default and actual prejudice, or that a miscarriage of justice will result if the court refuses to hear these claims. *See Coleman*, 501 U.S. at 750–51, 111 S.Ct. 2546. It appears that petitioner asserts the ineffective assistance of counsel as cause for failing to present these claims on direct appeal. The court rejects this argument. Where a petitioner fails to demonstrate that he received ineffective assistance of counsel, "it is axiomatic that such a claim cannot serve as the basis for his procedural default." *Coverdale v. Snyder*, 2000 WL 1897290, at *4 n. 9 (D.Del. Dec.22, 2000). As previously discussed, the court agrees with the Delaware Supreme Court's judgment that petitioner's ineffective assistance of counsel claim is without merit. Petitioner does not assert any other reason for his procedural default. Consequently, petitioner has failed to demonstrate any external factor sufficient to overcome his procedural default.

■ Because petitioner has failed to establish cause for his procedural default, the court does not have to consider the issue of actual prejudice.[19] *See Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Lawrie*, 9 F.Supp.2d at 453 (D.Del.1998). Moreover, the court concludes that a miscarriage of justice will not result if the court refuses to consider these claims. A miscarriage of justice is established only when the petitioner demonstrates actual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Petitioner has neither asserted his actual innocence nor presented any evidence of actual innocence. As such, petitioner fails to establish that miscarriage of justice will result if the court refuses to hear these claims. Accordingly, the court will dismiss these two claims as procedurally barred from federal habeas review.

19. Even if the court were to consider the question of actual prejudice, the court concludes that petitioner has failed to demonstrate prejudice resulting from the state procedural bar. In order to show actual prejudice, a petitioner must establish "not merely that the errors at … trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. at 494, 106 S.Ct. 2639. Nothing in petitioner's submissions asserts actual prejudice due to these alleged errors. Moreover, a review of the state court record does not support a finding of actual prejudice. The Superior Court only concluded that petitioner qualified as an habit-ual offender after additional briefing on the issue. (D.I. 11: Super. Ct. Transcript of Sentencing Proceedings Apr. 18, 1997 at 22); *State v. McLaughlin*, 1997 WL 718658 (Del.Super.Ct. Aug.8, 1997). Under the AEDPA, this court must presume that the state court's findings of fact are correct. 28 U.S.C. § 2254(e)(1). Petitioner must rebut the presumption of correctness with clear and convincing evidence. *Id.* Petitioner offers no evidence rebutting the Superior Court's conclusion that the three incidents qualified as felonies under 11 Del. Stat. Ann. § 4214(b), specifically: (i) Burglary in the Second Degree; (ii) Assault in the Second Degree; and (iii) the 1992 North Carolina conviction as a felony drug conviction under the Delaware Criminal Code.

**B. Ground Two: Trial court committed reversible error in admitting evidence of prior bad acts, by not questioning the credibility of witnesses, and in failing to instruct the jury regarding lesser included offenses.**

### 1. *Prior bad acts and witness credibility*

Ground two of petitioner's model § 2254 form alleges that the Delaware Superior Court erred by admitting into evidence two prior incidents of bad conduct. This claim is identical to the one he raised on direct appeal to the Delaware Supreme Court. *See McLaughlin v. State,* 719 A.2d 489, 1998 WL 665056 (Del.1998). Specifically, petitioner asserts that the court erred in admitting evidence of a December 1995 burglary to which petitioner pled guilty and was ordered to have no contact with his former girlfriend. He argues that evidence of the no-contact order alone was sufficient to show his awareness that he was not permitted to enter his former girlfriend's home; the additional admission of the 1995 burglary conviction was unduly prejudicial. (D.I. 6 Argument V) He also contends that the court erred in permitting evidence regarding a March 1996 incident when he kicked in his former girlfriend's back door and argued with her. Petitioner questions the credibility of the eye witness testifying as to this incident. Although the Delaware Supreme Court acknowledged that the Superior Court failed to perform a complete *Getz* analysis with respect to the March 1996 incident, it concluded that such error was harmless and affirmed the Superior Court's decision to admit these two prior bad acts.

The underlying premise of petitioner's claim is that the admission into evidence of these two prior bad acts violated Rule 404(b) of the Delaware Rules of Evidence and unduly prejudiced his right to a fair trial. (D.I.6) The respondents assert that petitioner's claim alleges only a violation of Rule 404(b) of Delaware's Rules of Evidence and therefore does not present a cognizable claim for federal habeas review. (D.I. 18 at 6–8) They also argue that, to the extent petitioner alleges a violation of federal or constitutional law, the claim is unexhausted and procedurally barred. (*Id.* at 7)

■ A liberal reading of petitioner's submissions to this court suggests that he attempts to allege violations of both state and federal law. For the most part, petitioner asserts only a violation of state evidentiary law. The heading for ground two of his model § 2254 form states "crimes under Rule 404(b)," referring to Rule 404(b) of the Delaware Rules of Evidence. (D.I.2) The text of his argument contained in his separate memorandum in support of the petition only refers to state court decisions and Rule 404(b); there is not one citation to any constitutional provision, federal law, or any case interpreting federal constitutional provisions. (D.I. 6 Argument VI) However, there is one brief statement in the conclusion of his separate memorandum referring to the constitution: "Defendant prays that this Honorable Court grant appropriate relief for violations of 'due process,' fourth, fifth, sixth, and fourteenth [amendment] constitutional rights." (D.I.6) Thus, in the exercise of extreme caution, the court will interpret this claim to assert both state and federal law violations.

■ To the extent petitioner alleges a state law violation, the claim is not cognizable in this federal habeas proceeding. The AEDPA restricts federal habeas review of a petition filed by a petitioner to claims based "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review. *Pulley v. Harris,* 465 U.S.

37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Riley v. Taylor,* 277 F.3d 261, 310 n. 8 (3d Cir.2001); *Bright v. Snyder,* 218 F.Supp.2d 573, 581 n. 1 (D.Del.2002) (citations omitted). The court concludes that to the extent petitioner's claim asserts a violation of state evidentiary rules, petitioner has not alleged a cognizable claim for federal habeas relief.

█ To the extent petitioner asserts that the admission of this evidence violated his constitutional rights, this court must first determine whether the requirements of the AEDPA are satisfied. Specifically, the court must decide if petitioner has exhausted state remedies. *See* U.S.C. § 2254(b)(1). In order to exhaust state remedies, petitioner must have "fairly presented" the factual and legal substance of the federal claim to the state courts "in a manner that put[ ] them on notice that a federal claim [wa]s being asserted." *McCandless v. Vaughn,* 172 F.3d 255, 262 (3d Cir.1999). A petitioner's use of broad concepts such as "due process" and "fair trial" does not provide sufficient notice to a state court that a petitioner is asserting a federal constitutional claim. *Gray v. Netherland,* 518 U.S. 152, 163, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Keller v. Larkins,* 251 F.3d 408, 415 (3d Cir.2001).

█ After reviewing petitioner's submissions to the Delaware Supreme Court, this court concludes that petitioner did not fairly present his evidentiary violations as a federal claim. Petitioner's brief filed on direct appeal to the Delaware Supreme Court challenged the introduction of the two prior bad acts and the credibility of the witnesses only as a state law claim under Rule 404(b) of the Delaware Rules of Evidence, without any mention of constitutional or federal law. (Defendant's Op. Brief, *McLaughlin v. State,* No. 416, 1997, 1998 WL 665056). Further, neither the Delaware Supreme Court nor the respondents interpreted his claims as alleging a violation of federal or constitutional law. *Id.*

Moreover, petitioner's statement that the trial court committed "reversible error" in admitting this evidence does not constitute sufficient notice to the state courts that he was arguing that the evidentiary error violated federal or constitutional law. As stated by the United States Supreme Court:

If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *see Keller v. Larkins,* 251 F.3d 408, 415 (3d Cir.2001). Applying this standard to petitioner's single statement regarding reversible error demonstrates that this statement did not provide sufficient notice to the state courts regarding a federal or constitutional claim. For these reasons, the court concludes that petitioner did not fairly present this evidentiary violation as a federal claim, and thus, he did not exhaust state remedies.

█ State court review of this claim is foreclosed because the time for an appeal or for filing a motion for post-conviction relief has expired. *See* Del.Supr. Ct. R. 6(a)(ii)(iii); Del.Super. Ct. R.Crim. P. 61(i)(1). Although petitioner's failure to exhaust is excused because there are no available state remedies, this claim is procedurally defaulted under Rule 61(i)(3) for failure to raise it on direct appeal. *Bialach v. State,* 773 A.2d 383, 386 (Del.2001). Petitioner raised these evidentiary claims on direct appeal to the Delaware Supreme Court, but they were raised as *state evidentiary* claims and not as *federal* claims. As a result, these claims are now procedurally barred under Rule 61(i)(3) unless

petitioner demonstrates either cause and prejudice, or a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Lines,* 208 F.3d at 160.

It appears that petitioner asserts the ineffective assistance of his counsel as cause for the default.[20] However, because the court concludes this ineffective assistance of counsel claim is meritless, it cannot constitute cause for procedural default.[21] Further, nothing in the record indicates a miscarriage of justice will result if the court refuses to entertain this claim. Petitioner's federal claim asserting and evidentiary error under Rule 404(b) is procedurally barred from habeas review.

### 2. *Lesser included offenses instruction*

■ Petitioner's model § 2254 briefly states that the Superior Court committed reversible error because it never instructed the jury regarding lesser included offenses. The petitioner does not provide any support for this brief statement. However, it appears that this assertion corresponds to a claim he raised in a motion for new trial prior to sentencing. *See McLaughlin v. State,* 784 A.2d 1081, 2001 WL 1388639 (Del.2001). The Superior Court denied this motion as untimely, and petitioner did not raise this claim in his direct appeal, motion for post-conviction relief, or appeal from the denial of post-conviction relief. *Id.* As a result, this claim is unexhausted because it was never presented to the Delaware Supreme Court. No state remedies are available, thereby excusing the failure to exhaust. However, although excused, this claim is procedurally defaulted under Rule 61(i)(3) unless petitioner demonstrates cause and actual prejudice. His assertion of ineffective assistance of counsel does not constitute cause for the default because, once again, his counsel rendered constitutionally effective assistance. Moreover, petitioner's submissions are devoid of any assertion of prejudice. Accordingly, the court will dismiss this claim for being procedurally defaulted.

Even if, arguendo, this claim satisfied the procedural requirements, it does not present a constitutional issue proper for habeas review. The Third Circuit has stated that "jury instructions in State trials are matters of state law ... reviewable by a federal court on collateral attack where the instruction violates specific federal constitutional standards imposed on the States through the due process clause of the Fourteenth Amendment." *Hallowell v. Keve,* 555 F.2d 103, 106 (3d Cir. 1977); *Getz v. Snyder,* 1999 WL 127247, at *14 (D.Del.1999). Other circuits have held that the failure to give lesser included offense instructions in a non-capital case does not present a constitutional question. *See Pitts v. Lockhart,* 911 F.2d 109, 112 (8th Cir.1990); *Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir.1975). In the present case, the petitioner has failed to provide any reason for asserting this claim other than that it constitutes reversible error. He does not allege any specific, or even general, constitutional violation resulting from the Superior Court's "failure" to instruct about lesser included offenses. As such, the court concludes that this claim does not satisfy the requirement

---

**20.** Petitioner's ineffective assistance of counsel claim does not allege any deficiencies in counsels' performances due to the failure to object to the 404(b) evidence or to failing to question the credibility of witnesses. As such, the ineffective assistance of counsel claim asserted by petitioner could not constitute cause for this particular default. The court also notes that counsel did object to this evidence at trial, and raised the issue on direct appeal.

**21.** Moreover, because the court concludes that petitioner has not provided cause for the procedural default, it does not need to address the issue of actual prejudice. *Smith v. Murray,* 477 U.S. at 533, 106 S.Ct. 2661.

stated by the Third Circuit, and therefore does not present a cognizable claim on habeas review.

**C. Ground Three: Sentence imposed against spirit and intent of Delaware law; Waiver of Indictment and Altered Documents**

**1. *Sentence imposed against spirit and intent of Delaware's habitual offender statute***

■ Petitioner alleges that his sentence for life imprisonment was imposed against the spirit and intent of Delaware's Habitual Offender Statute, 11 Del. Stat. Ann. § 4214(b). The United States Supreme Court has clearly prohibited federal courts from reviewing habeas claims based on questions of state substantive law. *Getz v. Snyder*, 1999 WL 127247, at *4 (D.Del. Feb.18, 1999); *see Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Even if a state court incorrectly applies its own law, and such error is "couched in terms of equal protection and due process," this error does not constitute a constitutional claim cognizable on habeas review. *Getz*, 1999 WL 127247, at *4 (quoting *Geschwendt v. Ryan*, 967 F.2d 877, 888–89 (3d Cir.1992)). The court concludes that petitioner's claim rests solely on the interpretation of Delaware substantive law. Accordingly, petitioner fails to present any constitutional issues for the court and the claim is not cognizable on federal habeas review.

**2. *Altered documents and improper charges joined in one indictment***

Petitioner also alleges that the arrest warrants, indictment, and habitual offender motion were "unconstitutional" and deprived him of his right to a fair trial because they did not contain the required state seal. (D.I. 6 Arguments VII, IX) Additionally, petitioner claims that the two sets of charges originating from the two incidents on June 13, 1996, were improperly joined in one indictment, thereby constituting a constitutional error that violated his due process rights and effectively deprived him of a fair trial. (D.I. 6 Argument VIII)

■ Petitioner never raised these claims on direct appeal or to the Superior Court in his Rule 61 motion for post-conviction relief, but he did raise these claims to the Delaware Supreme Court upon denial of his post-conviction Rule 61 motion. The Supreme Court reviewed the claims for plain error, but a claim raised for the first time in the state's highest court on discretionary review is deemed unexhausted. *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir.1984). Although unexhausted, Superior Court Criminal Rule 61(i)(2) prevents petitioner from seeking further post-conviction relief. "Fundamental fairness" requires that when state remedies are no longer available, the exhaustion requirement should be deemed fulfilled. *See Teague v. Lane*, 489 U.S. 288, 297–98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Petitioner's failure to exhaust is excused.

■ Although deemed exhausted, these claims are still procedurally barred. First, respondents assert that the Delaware Supreme Court's review of the claim only for "plain error" under Delaware Supreme Court Rule 8 constitutes a plain statement that it invoked an independent and adequate state law for procedural default, thereby precluding federal habeas review of this claim. (D.I. 18 at 8–9) This court agrees that Rule 8 constitutes an independent and adequate state law ground for procedurally barring this claim. *See Lawrie*, 9 F.Supp.2d at 452–54 (D.Del. 1998) ("the fact that the Delaware Supreme Court, in applying Rule 8 used its discretion to review for plain error does not diminish the impact of the court's plain statement that Rule 8 was applicable.")

The Delaware Supreme Court clearly relied on this rule when it reviewed the claims for plain error, thereby constituting a "plain statement" under *Harris v. Reed,* 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), that its decision rested on state law grounds. *See Lawrie,* 9 F.Supp.2d at 452–454.

■ Second, the claims are procedurally barred by Rule 61(i)(3) for failure to raise them on direct appeal, unless he demonstrates cause and prejudice. Petitioner has not alleged cause for his procedural default and resulting prejudice, or that a miscarriage of justice will result if the court refuses to hear these claims. Accordingly, petitioner's claims regarding altered documents are procedurally barred, thereby precluding federal habeas review.

### 3. *Involuntary waiver of indictment and prosecutorial misconduct evidenced by altered documents etc.*

Finally, petitioner asserts that he did not knowingly and voluntarily waive his right to indictment, and that the Superior Court's docket sheet incorrectly states that he was indicted despite his alleged involuntary signing of the waiver of indictment. Petitioner asserts two alternative arguments to support these assertions. First, he claims that the respondents' "prosecution by information" was unconstitutional because he unknowingly and involuntarily waived "prosecution by indictment." He alleges that neither the public defender's office nor the Superior Court explained a waiver of indictment with him. (D.I. 6 Argument I) Second, petitioner states that the Delaware Superior Court's docket lists the indictment as filed on August 8, 1996, but that the waiver of indictment contains three different dates: (1) February 5, 1996 as the date it was received and filed; (2) January 11, 1996 as the date he and his counsel signed the waiver; and (3) February 5, 1997 as the date the prothonotary signed the waiver.[22] (D.I.6) He alleges that this inconsistency indicates that the respondents engaged in unethical conduct requiring the reversal of his conviction.

■ A thorough review of the record indicates that petitioner never raised these claims to any state court, either on direct appeal or on a post-conviction motion. As a result, these claims are unexhausted. Because the time for filing a motion for post-conviction relief has expired under Rule 61(i)(1), no state remedies are available, and the failure to exhaust is excused. Although deemed exhausted, these claims are procedurally barred by Rule 61(i)(3) because petitioner did not raise them on

---

**22.** Petitioner's allegations are contradictory. Regarding the waiver of indictment, no such waiver appears on the Superior Court's Criminal Docket. Although the photocopied waiver of indictment submitted by petitioner does contain three different dates, the court cannot discern which handwriting on the copy is the petitioner's and which handwriting belongs to other individuals. The existence of these different dates is not explained anywhere in the record. Nor does petitioner offer any other reason other than his conclusory allegation of misconduct. However, the fact that no such waiver is included on the docket indicates that the waiver was never filed. In contrast, the Superior Court Criminal Docket clearly states June 13, 1996 as the arrest date, and then August 5, 1996 as the indictment filing date. (D.I. 20, Appellants App. to Op. Brief dated Apr. 3, 1998) The record also contains a copy of the indictment, which is stamped as filed and received on August 5, 1996. The court will not engage in conjecture as to why petitioner has a photocopied waiver that was never filed or docketed. Instead, it relies on the clear and official statement of the Superior Court's Criminal Docket that petitioner was actually indicted on August 5, 1996. Consequently, because no such waiver was ever docketed and filed, in essence, no such waiver ever existed. As such, petitioner's argument that he involuntarily waived his right to indictment by prosecution is unsubstantiated.

direct appeal to the Delaware Supreme Court, and he fails to demonstrate cause for the default and resulting prejudice. Accordingly, the court dismisses these claims for being procedurally barred.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Moreover, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated above, the court concludes that petitioner's ineffective assistance of counsel claim should be denied because counsel did not render constitutionally ineffective assistance of counsel. The court also concludes that petitioner's claim asserting a violation of Rule 404(b) of the Delaware Rules of Evidence is not a cognizable claim under the federal habeas statute. Further, petitioner's additional claims are procedurally barred from federal habeas review. Reasonable jurists would not find these conclusions unreasonable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court concludes that petitioner's request for habeas relief filed pursuant to 28 U.S.C. § 2254 either lacks merit or is otherwise procedurally barred. Therefore, petitioner's application for federal habeas relief shall be dismissed and the writ denied. Furthermore, the court finds no basis for the issuance of a certificate of appealabilty. An appropriate order shall issue.